## GENERAL COURT, OCTOBER TERM, 1802.

### JENINGS's Adm'r. *vs.* HIGGINS.

A master, in order to retain the services of his slave who has petitioned for his freedom, must enter into the usual recognizance for suffering the petitioner to prosecute his petition, &c.
If a petitioner for freedom obtains a judgment in his favour, which is afterwards reversed on appeal, his master cannot recover the value of his services from a person who may have hired him between the time of the first judgment and that of its being reversed, unless he has given bond to prosecute the appeal.
And if he does give such bond it seems he will have a right to keep such petitioner in his possession pending the appeal

ERROR to Anne Arundel county court. It was an action of *assumpsit* for *work and labour* performed, &c. by a servant man of the defendant in error, called *Nathan Allen*, for the intestate, and at his request, &c. The general issue pleaded. At the trial in the county court, the plaintiff in that court, (*Higgins*,) offered evidence to the jury, that a certain negro *Nathan*, whom he claimed as his slave, left his service in December 1794, and went into the service of the defendants' intestate, (*Jenings*,) and remained in the service of the said intestate while he made two crops, and that the plaintiff, in December, came and claimed him as a slave, and took him out of the possession of the defendant's intestate into his own possession. The defendant then offered in evidence to the jury, the record and proceedings of a judgment rendered in Anne Arundel county court, in September 1794, on the petition of the said *Nathan Allen*, against the plaintiff, claiming his right to freedom, and the judgment of the said court thereon, that the said *Nathan Allen* was entitled to his freedom, and that he be discharged from the service of the said *Higgins*. The defendant also offered to prove, that immediately after the judgment given in favour of the said petitioner, in the said record of proceedings mentioned, to wit, in the month of December 1794, the said negro *Nathan* left the service of the said *Higgins*, and went into the service of the defendant's intestate, and not before. The plaintiff then offered

to prove, by *J C. Higgins*, that he, the witness, was the manager of the business of the plaintiff, and that he had had the management and direction of this negro *Nathan* together with the other negroes of the plaintiff.   That the said *Nathan* was not permitted by the plaintiff to hire himself to the defendant's intestate, or to any other person, and that the said witness did not, nor did any other person demand the possession of the said negro from the defendant's intestate, or claim any compensation for his hire, until the month of November 1796, when the witness, as directed by the plaintiff, claimed and took possession of said negro as before mentioned.   He also offered evidence that the judgment of the county court of Anne Arundel on the said negro *Nathan's* petition for freedom, was afterwards, at October term 1796, reversed by the general court, and the judgment of the general court was affirmed by the court of appeals at June term 1798.

The defendant then prayed the court to direct the jury, that if upon the aforegoing evidence, the jury were of opinion that said negro was in the possession of *Thomas Jenings*, the intestate, from the time of the judgment aforesaid in Anne Arundel county court in favour of said negro, the petitioner, until the same was reversed in the general court as above stated, that then the plaintiff was not entitled to recover in this action, unless the jury were also of opinion that the said negro was expressly hired to the said intestate by the plaintiff, or unless he went into the service of the intestate with the previous consent of the plaintiff, or of some one acting by his authority, and intending to claim compensation for his services during the said time.

BUT THE COUNTY COURT, *(Ridgely*, Ch. J.*)* refused to give such direction, but was of opinion, and so directed the jury, that if they should be of opinion that said negro was hired by the defendant's intestate after the rendition of the judgment in the county court, and during the time the same remained unre-

44

Oct. 1802

Jenings
vs
Higgins

versed, and that the said negro had not himself re-
ceived the wages of such hire before said reversal,
that the plaintiff was entitled to recover them in this
form of action. But that if the jury should be of
opinion that the said wages were paid to the said ne-
gro before the reversal of the said judgment, that
then the plaintiff in this form of action could not re-
cover. To which opinion, the defendant excepted.
And the verdict and judgment being for the plaintiff,
the defendant obtained a writ of error, and removed
the proceedings to this court.

    *Shaaff* and *Jenings,* for the Plaintiff in error.
    *Ridgely* and *Johnson,* for the Defendant in error.

    THE GENERAL COURT *reversed* the judgment of
the County Court—observing, that upon the appear-
ance of the master to a petition for freedom by his slave,
in order to retain the services of the petitioner, he
must enter into a recognizance in the usual form, for
suffering the petitioner to prosecute his petition, to
use him well, &c. and that if judgment be given for
the petitioner, and the master appeals, he must,
to retain the service of the petitioner, enter into
bond with security, to prosecute the appeal—neither
of which in this case was done, as appears by the re-
cord of the proceedings exhibited in the bill of ex-
ceptions.